J. W. PRATT, COMMISSIONER OF PUBLIC LANDS, *v.*
C. S. HOLLOWAY, SUPERINTENDENT OF PUB-
LIC WORKS.

SUBMISSION ON AGREED FACTS.

ARGUED JUNE 4, 1906.            DECIDED JUNE 18, 1906.

FREAR, C.J., HARTWELL AND WILDER, JJ.

ORGANIC ACT—*power of superintendent of public works over public lands.*

Section 75 of the Organic Act gives the superintendent of public works the same limited power of disposing of lands described in the proviso of Section 262, R. L., that the minister of the interior formerly had, and controls Section 73 of the same act in that regard.

PUBLIC LANDS—*town lots.*

Remnants of land in Honolulu not contained in any grant, not needed for any public purpose, and not within any contemplated public use, are "town lots" within the meaning of the proviso of Section 262, R. L.

ID.

This court cannot decide in advance whether the superintendent of public works should or should not turn over certain lands to the commissioner of public lands under Section 262, R. L.

OPINION OF THE COURT BY WILDER, J.

This is a submission on agreed facts under R. L., Sec. 1748. Defendant is about to recommend, against the protest of plaintiff, the issuance of a patent to one Shingle of a certain lot of kula land, being a remnant not included in any grant and

known as "lot 542 A," situate in Honolulu on the Waikiki side of Shingle street near the corner of Piikoi and Shingle streets, and adjoining the northwesterly boundary of the Lunalilo Home premises, and is about to lease to one Ryan 3.03 acres of land in Honolulu on the makai side of Middle street, Kalihi, being kula land suitable for either agricultural or building purposes. Neither one of these pieces of land is devoted to nor needed for any public purpose or within any contemplated public use. Defendant relies upon section 75 of the Organic Act and plaintiff upon section 73 of the same act.

The questions for determination are (1) whether the superintendent of public works has the right either to recommend the issuance of or to countersign or to cause to be issued a patent as aforesaid, or to make a lease as aforesaid, (2) whether said pieces of land are "town lots" within the provisions of R. L., Sec. 262, (3) what is included in the term "town lots" as used in said Sec. 262, and (4) whether lands enumerated in the proviso of R. L., Sec. 262, should be turned over by the superintendent to the commissioner of public lands in cases where they are neither devoted to nor needed for any public purpose.

Sections 73 and 75 of the Organic Act are as follows:

"That the laws of Hawaii relating to public lands, the settlement of boundaries, and the issuance of patents on land-commission awards, except as changed by this Act, shall continue in force until Congress shall otherwise provide. * * * In said laws 'land patent' shall be substituted for 'royal patent;' 'commissioner of public lands' for 'minister of the interior,' 'agent of public lands,' and 'commissioner of public lands,' or their equivalents. * * * " Sec. 73, Organic Act.

"That there shall be a superintendent of public works, who shall have the powers and duties of the superintendent of public works and those of the powers and duties of the minister of the interior which relate to streets and highways, harbor improvements, wharves, landings, waterworks, railways, electric light and power, telephone lines, fences, pounds, brands, weights and measures, fires and fireproof buildings, explosives, eminent domain, public works, markets, buildings, parks and cemeteries, and other grounds and lands now under the control

and management of the minister of the interior,   *   *   *   ''
Sec. 75, Organic Act.

In the days of the kingdom the following were the statutes.
in existence:

"A Royal Patent, signed by the King, and countersigned by
the Minister of the Interior, shall issue under the great seal
of the kingdom to the purchaser in fee simple of any Govern-
ment land or other real estate; and also to any holder of an
award from the Board of Commissioners to quiet land titles.
for any land in which he may have commuted the Government
rights." Compiled Laws, Sec. 43.

"The said Minister, by and with the authority of the King.
in Cabinet Council, shall have power to lease, sell or otherwise
dispose of the public lands, and other property, in such man-
ner as he may deem best for the protection of agriculture, and
the general welfare of the kingdom, subject, however, to such
restrictions as may, from time to time, be expressly provided by
law. And provided that no sale of one land or lot exceeding
five thousand dollars in value shall be made without the con-
sent of the King and a majority of the Privy Council." Com-
piled Laws, Sec. 42.

The constitution of 1894 amended those sections by chang-
ing "king" to "president" and "kingdom" to "republic" and
"king in cabinet council" to "executive council." The code
commission changed these two sections so that they now read as.
follows:

"Except as otherwise provided, a land patent, signed by the
governor, and countersigned by the commissioner of public
lands or superintendent of public works, as the case may be,
shall issue under the great seal of the Territory to the pur-
chaser in fee simple of any government land or other real estate;
and also to any holder of an award from the board of commis-
sioners to quiet land titles for any land in which he may have
commuted the government rights." Sec. 250, R. L.

"The commissioner of public lands or superintendent of
public works, as the case may be, by and with the authority of
the governor, shall have power to lease, sell or otherwise dis-
pose of the public lands, and other property, in such manner
as he may deem best for the protection of agriculture, and the
general welfare of the Territory, subject however, to such

restrictions as may, from time to time, be expressly provided by law." Sec. 252, R. L.

The "land act of 1895" provided as follows:

"In this Act, if not inconsistent with the context, 'Public Lands' means all lands heretofore classed as Government lands, all lands heretofore classed as Crown Lands, and all lands that may hereafter come into the control of the Government by purchase, exchange, escheat, or by the exercise of the right of eminent domain or otherwise except as below set forth. * * *

"Provided however, that this Act shall not apply to the following classes and descriptions of land, the property of the Government, all of which shall remain under the control and management of the Minister of the Interior.

"Town lots, sites of public buildings, land used for public purposes, roads, streets, landings, nurseries, tracts reserved for forest growth, and conservation of water supply, parks, and all lands which may hereafter be used for public purposes. All land hereafter reserved by the Commissioners for public purposes, shall thereupon at once pass under the control and management of the Minister of the Interior.

"The Minister of the Interior with the consent of the Executive Council shall have the authority at any time to turn over to the Commissioners for the purposes of this Act any lands or parts of lands reserved for public uses."

That section now stands in the Revised Laws as follows:

"In this chapter, if not inconsistent with the context, 'public lands' mean all lands heretofore classed as government lands, all lands heretofore classed as crown lands, and all lands that have since August 14, 1895, or may hereafter come into the control of the government by purchase, exchange, escheat, or by the exercise of the right of eminent domain or otherwise except as below set forth. * * *

"Provided, however, that this chapter shall not apply to the following classes and descriptions of land, the property of the government, all of which shall remain under the control and management of the superintendent of public works.

"Town lots, sites of public buildings, land used for public purposes, roads, streets, landings, nurseries, tracts reserved for forest growth, and conservation of water supply, parks and all lands which may hereafter be used for public purposes. All land hereafter reserved by the commissioner for public purposes, shall thereupon at once pass under the control and management of the superintendent of public works.

"The superintendent of public works with the consent of the governor shall have the authority at any time to turn over to the commissioner for the purposes of this chapter any lands or parts of lands reserved for public uses." Sec. 262, R. L.

The Land Act of 1895 provided for a board of three commissioners of public lands, one of whom was the minister of the interior. The Organic Act apportioned the powers and duties of the minister of the interior between the superintendent of public works and the commissioner of public lands, in the main the division being that a commissioner of public lands took those powers and duties of the minister of the interior set out in the Land Act of 1895, the Boundaries Act, and the act providing for royal patents issuing on land commission awards, and the superintendent of public works those powers and duties outside of those acts, among which were the "powers and duties which relate to * * * other grounds and lands now under the control and management of the minister of the interior," meaning the lands mentioned in the proviso of section 2 of the Land Act of 1895. As pointed out in the note to R. L., Sec. 250, there were three classes of public lands, namely, (1) those intended for settlement, that is, homestead purposes, etc., which may be considered "public lands" proper; (2) the lands referred to in the proviso of Sec. 262, R. L., being mainly those used for public purposes; and (3) lands for school purposes.

The power of the superintendent of public works to dispose of lands in class 2 is found in Sec. 75 of the Organic Act, which says that he shall have the "powers and duties of the minister of the interior which relate to * * * grounds and lands under the control and management of the minister of the interior." If the minister of the interior formerly had a limited power to dispose of those lands, (and about that of course there is no question,) the superintendent of public works now has the same power, unless section 73 of the Organic Act has lodged that power in the commissioner of public lands. That section, in the first place, refers to the laws of Hawaii "relating to public lands, the settlement of boundaries, and the issuing of patents on land commission awards," and then

provides that in "said laws" the "commissioner of public lands" shall be substituted for the "minister of the interior." That the commissioner is substituted for the minister in the laws relating to the settlement of boundaries and the issuance of patents on land commission awards is clear. The only question is whether in the laws relating to public lands, where the commissioner is substituted for the minister, it means public lands in the sense of all lands belonging to the government, that is, to the public, or the public lands mentioned above as being class 1. If the former meaning is the correct one then there is a direct conflict between sections 73 and 75 of the Organic Act, because the latter section has given to the superintendent of public works the powers and duties of the minister of the interior which relate to lands in class 2, and one of those powers was to dispose of those lands. And that meaning would force the conclusion that the effect of the proviso of Section 262, R. L., was that the commissioner of public lands had authority to turn over certain lands to himself, which would be an absurdity. It is provided by statute in this Territory that every construction which leads to an absurdity should be rejected. R. L., Sec. 13. That is also a well known principle of statutory construction. End. Int. Stat., Secs. 258, 264; Lewis' Suth. Stat. Con., Secs. 489, 490. It is another well known principle of statutory construction that every construction which leads to a conflict between two sections in the same act should be avoided. End. Int. Stat., Sec. 40; Lewis' Suth. Stat. Con., Sec. 346. Section 75 of the Organic Act is particular in specifying the power of the superintendent, and section 73 of the same act is general in substituting the commissioner for the minister. Therefore the claim contended for by plaintiff, in the first place, would give rise to a conflict between the two sections, in the second place to an absurdity, and in the third place to allowing a general provision to prevail over a later particular provision, the inference to be drawn from all of which is that section 75 is to control section 73 in so far as they would otherwise conflict.

Plaintiff concedes that the lands mentioned in the proviso of section 262, R. L., which we have called class 2, shall be under the "control and management" of the superintendent. But if the commissioner of public lands shall be substituted for minister of the interior in all laws relating to public lands in the sense of meaning both classes 1 and 2, then he would also have to be substituted as to these lands in class 2 which, as already pointed out, would lead to an absurdity. Conceding then, as he does, that the superintendent now has the control and management of those lands, which is given to him by section 75, why does not section 75 also give him besides the control and management the limited power to dispose, that is, by leasing or recommending the issuance of a patent, which the minister of the interior formerly had? The section gives him both the power of control and management and the power of disposition or it gives him neither. The matter, therefore, cannot be determined simply by ascertaining whether the power to control and manage includes the power to dispose.

Plaintiff further contends that, if his construction is not adopted, it will militate against a just balance of powers between branches of the executive department, and it will make for confusion, divided responsibility and uncertainty not only of official duties and public records but of land titles as well and that it will open "avenues of abuse and graft." It does not appear that such results will follow, but, even if they may, congress had the power to so legislate, and in our opinion it has done so.

Reference is also made to the practice existing under Governor Dole's administration of following the construction contended for by plaintiff. This not only does not appear from the submission, but the contrary does appear, in that the superintendent has recommended to the present governor and countersigned with him two patents of lands in class 2 and against the protest of the commissioner. But, even if there was such a practice during Governor Dole's regime, we do not understand that that would prevail against well settled principles of statutory construction.

It is also claimed by plaintiffs that chapter 21 of the Revised Laws, authorizing the superintendent of public works to lease on certain conditions lands in class 2, as we have designated them, shows that that chapter was enacted to give him some powers which he did not formerly have. An examination of that chapter will show, however, that it is a limitation of his power to lease and apparently contemplated by section 252, R. L., that the power to lease, etc., shall be subject "to such restrictions as may from time to time be expressly provided by law."

Plaintiff argues that, because section 73 of the Organic Act provides that "land patent" shall be substituted for "royal patent" in "said laws," it meant other statutes besides the Land Act of 1895 in which "royal patent" did not appear. It did mean other statutes besides that act, for instance, the laws relating to the issuance of royal patents on land commission awards.

The conclusion is, therefore, that the Organic Act divides the powers which the minister of the interior formerly had.

The second question is whether the lands which the defendant desires to lease or dispose of are "town lots" within the meaning of section 262, R. L. It appears that they are remnants not contained in any grant and not needed for any public purpose nor within any contemplated public use. They are not within the description of public lands referred to in section 263, R. L., with which now the superintendent has nothing to do, and they are within the description mentioned in the proviso of section 262, R. L. Therefore, the second question is answered in the affirmative.

The third question as to what is included in the term "town lots," as used in section 262, R. L., depends on what the facts are with reference to the particular lands, and no facts are set forth. Therefore the question is not answered.

The fourth question is whether the lands mentioned in the proviso of section 262, R. L., should be turned over to the commissioner in cases where they are neither devoted to nor needed for public purposes. The superintendent, with the con-

sent of the governor, has the authority to turn over lands reserved for public uses to the commissioner, and consequently this court cannot decide that he should or that he should not turn over such lands.

Judgment accordingly.

*C. F. Clemons,* (*Thompson & Clemons* on the brief,) for plaintiff.

*F. W. Milverton, Deputy Attorney General,* for defendant.

